Darlene WHEELER and James
Wheeler, Plaintiffs–
Appellants,

v.

BAPTIST HEALTHCARE SYSTEM,
INC. d/b/a Western Baptist Hospital,
Defendant–Appellee.

No. 00–5518.

United States Court of Appeals,
Sixth Circuit.

July 16, 2001.

Before MARTIN, Chief Judge;
NORRIS, Circuit Judge; QUIST, District
Judge.*

PER CURIAM.

Darlene and James Wheeler appeal the
district court's grant of Baptist Health-
care's motion for summary judgment on
their claim of medical malpractice and loss
of consortium. They also appeal the dis-
trict court's denial of their motion to va-
cate the summary judgment order.

* The Honorable Gordon J. Quist, United States
District Judge for the Western District of Michigan, sitting by designation.

## I.

On May 19, 1998, Darlene Wheeler, an Illinois resident, began experiencing rectal pain. On May 26, she saw her doctor, Dr. Randy Oliver, who diagnosed her with severe hemorrhoids. Dr. Oliver called Dr. Charles Shields, a surgeon, who told Wheeler that he would perform surgery on her hemorrhoids that evening at Western Baptist Hospital in Paducah, Kentucky. Dr. Shields informed Wheeler that she would be in the hospital for twenty-three hours and that the hospital staff would give her rectal soaks, cleanings, and sitz baths (shallow baths taken in a seated position). He did not inform her of any effect the surgery might have on her bowels.

Wheeler remained in the hospital until May 31 because she was having urination problems after the surgery. Dr. Shields noted on May 29 that Wheeler would be "discharged home after enemas if she has a good bowel movement and has no problems with voiding after removal of the catheter." She did not have any bowel movements on May 27 or 28, and she began experiencing severe rectal pain on May 29. A nurse who gave her a catheter on May 29 asked Wheeler if she had had a bowel movement that day. Wheeler answered that she might have had a small one. The nurse asked Wheeler if she thought she should be given an enema. Wheeler replied that she did not know but that the nurse should know. Wheeler was not given an enema. Later that afternoon, Wheeler asked the nurses to look in her sitz bath water to determine if any bowel movement was in it because she could not discern whether any loose stool was present in the discolored water. Although Wheeler stated that she did not have any substantial bowel movements on May 29, the daily patient care record for May 29 appears to indicate three stool eliminations during the 7:00 a.m.–to–3:00 p.m. shift.

Wheeler also experienced rectal bleeding during the evening of May 29.

Wheeler was released on May 31. After she was home, she continued to experience rectal pain and heavy bleeding. On the morning of June 1, she called Dr. Shields, and he told her that if her symptoms worsened, she should go to the emergency room. She did go to the emergency room at approximately 6:30 that evening. A doctor in the emergency room thought that Wheeler was experiencing bowel obstruction and should be admitted. Wheeler refused to be admitted if she had to return to the same floor where she had been staying, and she was allowed to stay on a different floor of the hospital. Once she was admitted, a nurse gave Wheeler an enema, which proved effective in removing the bowel obstruction. Wheeler was discharged on June 3 but did not resume normal activity for about two months.

On November 9, Wheeler and her husband filed a medical malpractice complaint against the hospital alleging negligence, gross negligence, and loss of consortium. The complaint alleged several specific negligent actions, most of which resulted from inattentive and unresponsive nursing staff. The complaint requested compensatory damages of at least $75,000 as well as punitive damages.

On November 25, Baptist Healthcare served the Wheelers with interrogatories and a request for production, including expert identification. On September 1, the Wheelers identified their experts as Dr. Shields, Wheeler's treating surgeon, and Dr. Oliver, her family doctor, but did not attach any affidavits from them. On October 26, Baptist Healthcare filed a motion for summary judgment, arguing that the Wheelers had presented no proof that it had deviated from accepted medical standards of care. On the same day, Baptist

Healthcare also moved to strike the Wheelers' expert witnesses. On November 3, Baptist Healthcare filed its designation of expert witness, Dr. Paulette Adams, and attached Dr. Adams's report letter and curriculum vitae. Dr. Adams stated that the physician's orders "left the decision for implementing the procedure at the discretion of the nurse caring for Mrs. Wheeler. The nurses caring for Mrs. Wheeler documented their assessment of the abdomen and intestinal tract and found no symptoms that might alert them to any pending complications."

The district court granted Baptist Healthcare's summary judgment motion on January 31, 2000, on the ground that the Wheelers had not presented the necessary expert evidence that the hospital was negligent or that any negligence caused her medical problems. On February 10, the Wheelers filed a motion to vacate the order granting summary judgment, which the district court denied on March 20. On April 19, the Wheelers filed a notice of appeal from the denial of their motion to vacate and from the district court's summary judgment decision.

## II.

We review de novo a district court's grant of summary judgment. *See Junger v. Daley*, 209 F.3d 481, 484 (6th Cir.2000). Summary judgment is granted if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). In reviewing a grant of summary judgment, we "must draw all justifiable inferences in favor of the nonmoving party." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991).

 Because jurisdiction in this case is based on diversity, we apply the substantive law of Kentucky. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In Kentucky, a medical malpractice plaintiff must prove two things: "that the treatment given was below the degree of care and skill expected of a reasonably competent practitioner and that the negligence proximately caused injury or death." *Reams v. Stutler*, 642 S.W.2d 586, 588 (Ky.1982). The general rule in Kentucky is that malpractice "must be established by medical or expert testimony unless the negligence and injurious results are so apparent that laymen with a general knowledge would have no difficulty in recognizing it." *Johnson v. Vaughn*, 370 S.W.2d 591, 596 (Ky.1963).

Wheeler argues that although she presented no medical expert evidence, three medical documents ordering an enema for May 29 are sufficient to create a genuine issue of material fact as to negligence. She claims that the hospital was negligent in not following doctor's orders to give her an enema and that no expert testimony is necessary to illustrate the negligence involved. She presented the physician's orders for routine post-hemorrhoidectomy care, which included an enema on the third post-operative day; a daily physician's orders sheet that noted to discharge her on May 29 "after enemas today if good BM"; and Dr. Shields's discharge summary, dated May 29, which stated, "Today, she will be discharged home after enemas if she has a good bowel movement." Wheeler argues that not following these orders constitutes negligence within the scope of common knowledge of laypersons.

 Kentucky courts have identified several cases of negligence that were within the scope of common knowledge of laypersons and thus did not require expert testimony. *See, e.g., City of Somerset v. Hart*, 549 S.W.2d 814 (Ky.1977) (scalpel blade left in patient's bladder); *Laws v. Harter*, 534 S.W.2d 449 (Ky.Ct.App.1975) (sponge left in abdomen); *Jewish Hospital*

*Ass'n v. Lewis,* 442 S.W.2d 299 (Ky.1969) (excessive bleeding after catheterization); *Meiman v. Rehab. Ctr., Inc.,* 444 S.W.2d 78 (Ky.1969) (bone broken during physical therapy); *Jarboe v. Harting,* 397 S.W.2d 775 (Ky.1965) (misdiagnosis of pregnancy as uterine tumor); *Neal v. Wilmoth,* 342 S.W.2d 701 (Ky.1961) (dentist's losing balance, falling onto patient, and jamming drill into patient's tongue and soft palate); *Butts v. Watts,* 290 S.W.2d 777 (Ky.1956) (fragment of extracted tooth left in socket). The Kentucky Supreme Court has noted the classic example of a situation "where lay testimony is sufficient to make a submissible jury issue"—amputating the wrong leg. *Mahaffey v. McMahon,* 630 S.W.2d 68 (Ky.1982).

Rather than being analogous to amputation of an incorrect limb, Wheeler's case is more in line with Kentucky cases finding expert testimony to be necessary, many of which involve the necessity of performing some medical procedure. *See, e.g., Turner v. Reynolds,* 559 S.W.2d 740 (Ky.Ct.App. 1977) (necessity of head x-rays after being stabbed in head); *Stokes v. Haynes,* 428 S.W.2d 227 (Ky.1968) (necessity of hospitalization of woman threatened with miscarriage); *see also Maggard v. McKelvey,* 627 S.W.2d 44 (Ky.Ct.App.1981) (failed performance of vasectomy). In addition, we have also reviewed a medical malpractice claim under Kentucky law and concluded that expert testimony was necessary on the issue of whether a hospital was negligent in failing to diagnose pneumonia and Legionnaires' disease. *See Vance v. United States,* 90 F.3d 1145 (6th Cir.1996).

In the present case, the Wheelers have presented no evidence to counter Baptist Healthcare's expert affidavit that the physician's orders for the enema were left to the discretion of the nurses. Without showing that physician's orders must always be followed to the letter or that nurses have no discretion in implementing physician's orders, the Wheelers have not created a genuine issue of material fact sufficient to prevent summary judgment. Wheeler also alleges negligence in the general poor quality of care she received at the hospital. While this Court may sympathize with her admittedly grim experience, the Wheelers have not presented the requisite expert testimony as to the standard of care and skill required of a reasonably competent hospital.

Because the Wheelers have not created a genuine issue of fact as to negligence, we need not reach the causation step of the malpractice analysis. Even assuming the Wheelers had shown negligence, they have not presented expert testimony to show that the nurses' failure to give Wheeler an enema caused her discomfort and rectal bleeding. A layperson could not determine without expert testimony that Wheeler's rectal problems stemmed from her need of an enema as opposed to the original hemorrhoid surgery.

### III.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Baptist Healthcare. We likewise AFFIRM the district court's denial of the Wheelers' motion to vacate.