JAMES MERRIMAN, APPELLANT, V. GRAND LODGE DEGREE
OF HONOR, ANCIENT ORDER OF UNITED WORKMEN OF
NEBRASKA, APPELLEE.

FILED NOVEMBER 22, 1906. No. 14,497.

1. **Insurance: APPLICATION.** Where a married woman is the holder of
a policy of life insurance, it is not a false representation for her
to sign a certificate, when she is pregnant, stating that she is in
sound bodily health, if the certificate is otherwise true.

2. ———: ———. Where a married woman is an applicant for life in-
surance in a company that issues policies on the lives of married
women, she is not required to inform the company of evidence
of pregnancy discovered subsequently to her physical examination
and application.

APPEAL from the district court for Lancaster county:
ALBERT J. CORNISH, JUDGE. *Reversed.*

*T. J. Doyle,* for appellant.

*A. G. Greenlee, contra.*

OLDHAM, C.

This was an action on a fraternal benefit certificate
issued by the defendant to Katherine Merriman, deceased,
payable at her death to her husband, plaintiff in this
action. The death of Katherine Merriman, her initiation
into the order, the issuance of the certificate, and the pay-
ment by the deceased of all dues and assessments in con-
formity with the by-laws of the order and the provisions
of the policy are all admitted. The sole defense relied
on is that the deceased made false representations in her
application for the benefit certificate in the order, it being
alleged that she falsely represented that she had not had
paralysis prior to making her application for membership,
and that she had falsely represented that she was not
pregnant at the time of such application. Defendant's
testimony was all directed to the support of these two

alleged false representations. On a trial of these issues to the court and jury, there was a verdict and judgment for the defendant, and the plaintiff appeals to this court.

For an intelligent review of the assignment of error in the plaintiff's brief, which, we think, is worthy of serious consideration, it is essential to review the admitted as well as the disputed questions at issue in this case. The defendant society, the Degree of Honor of the Ancient Order of United Workmen of Nebraska, is primarily a social organization for women bearing certain relationship to the members of the Ancient Order of United Workmen. Any woman bearing the required degree of relationship to a member of the parent order is eligible to social membership in defendant's order, but there is also within the order a benefit department for the purpose of providing life insurance for those of the memebers who may be found to come within the requirements as to age and health. On the 11th day of September, 1902, Katherine Merriman made application for membership in the Mistletoe lodge, No. 104, of Lincoln, Nebraska, a subordinate lodge of the defendant order, and, on the 18th day of October she signed an application for membership in the benefit department and submitted to a physical examination by the examining physician of the department under the rules of the order. This application could not be acted upon until the applicant had been initiated into the order, and on November 27 following she presented herself and was initiated. After her initiation, her application and the report of the examining physician thereon and the certificate of membership were presented to the grand medical examiner of the order and approved, and forwarded to the Grand Recorder, and on the 17th day of December the benefit certificate sued on was issued and sent to the deceased. Between the time of making application and the time of final issuance of the certificate there had been a lapse in payment of dues and assessments, which required, under the rules of the order,

38

a certificate of health before the back dues could be received and the benefit certificate be made effective. The before the policy was issued: "I, Katherine Merriman, lowing health certificate, which she signed and returned before the policy was issued: "I, Katherine Merriman, a member of Mistletoe lodge, No. 104, located at Lincoln, in the state of Nebraska, to whom benefit certificate No. — was issued in the beneficial department of the Grand Lodge Degree of Honor, A. O. U. W. of Nebraska, having been suspended from all the rights, benefits and privileges of the said department, by reason of nonpayment of assessment No. —, which suspension and forfeiture occurred within a period of three months prior to the date of this certificate, and desiring to be reinstated in said department as provided by the laws thereof, do hereby certify and warrant that I am, at this date, in sound bodily health, and that I agree that the reinstatement of myself as a member of the department based upon this certificate shall be valid and binding only upon the condition that the statement herein contained, relating to my bodily health, is true in every respect upon the day and date recorded on this certificate. (Signed) Katherine Merriman."

In the application for membership there are two lists of questions or interrogatories, one list to be answered by the applicant, and the other to be answered by the examining physician from his personal examination of the applicant. Among the questions propounded to and answered by the applicant was the interrogatory, "Have you ever had paralysis?" This question appears from the application to have been answered, "No." Among the questions which the examining physician was required to answer, when the applicant was a married woman, is, "Is she now pregnant?" The physician answered this question, "No." Now, it is without dispute in the record that plaintiff's wife died on the 10th day of April, 1903, from placenta prævia, or hemorrhage in childbirth. There was evidence

in the record, offered by the defendant, tending to show that the deceased had suffered from a partial stroke of paralysis about 18 months before making her application for membership in the order, but, on the other hand, it was contended by plaintiff that her ailment at that time was of a temporary character, a mere prelude to childbirth, and a symptom caused by pregnancy and of temporary duration, and plaintiff introduced testimony strongly tending to show that after the applicant's confinement she recovered her normal robust health, and engaged in hard labor, and was, at least apparently, in excellent physical condition until the day before her death.

As there is little or no competent testimony in the record pointing to paralysis as a contributing cause of Katherine Merriman's death, it is highly probable that the jury returned a verdict for defendant on the theory that the applicant had fraudulently concealed her condition of pregnancy from defendant's examining physician. While the examining physician testified that he made a careful physical examination of deceased, yet he said that he saw no outward signs of pregnancy and relied on deceased's statement that she was not in that condition. He also testified that from his examination he believed her to be a first-class risk for insurance. Now, from the fact that a fully developed child was born to the deceased about six months after the examination, it is clearly established that she was about three months pregnant when the examination was made, so that the material question is whether or not she fraudulently and knowingly misrepresented her condition. The testimony of the medical experts in this case shows that before the quickening period pregnancy cannot be detected from general symptoms, and that the quickening period ordinarily occurs during the fourth or fifth month of pregnancy. Consequently, the evidence is very slight that tends to show that the deceased knew of her pregnancy on the 18th day of October, 1902, but it is much stronger on the probability of her having knowledge of such fact on the 1st

of December following, for that date was probably, under the testimony, within the quickening period.

At the trial of the cause plaintiff asked for an instruction which, in substance, confined the applicant's knowledge of the truth of her answers to the question to the time when the application was signed. The court refused to give this instruction, and told the jury in paragraph 3 of instruction on its own motion: "In considering the question whether any statement made by the deceased, Katherine Merriman, was true or false, you should consider it as of the time she signed the application, up to and including the time when the contract between her and the defendant company was completed, being the time of the final approval of the application by the company, to wit, December 17, 1902. This is true, for the reason that up to the time of the final approval of the application it would be her duty to correct any statement contained in her application made by her which she subsequently learned was false." The learned trial court evidently gave this instruction on the theory that the health certificate signed on the 1st day of December amounted to a reaffirmation of each of the answers to the questions contained in the original application. To our minds this would extend the scope of the certificate much beyond what might reasonably have been within the mind of the party signing it. *American Order of Protection v. Stanley,* 5 Neb. (Unof.) 132, and *Geare v. United States Life Ins. Co.,* 66 Minn. 91. This certificate should be construed so as to resolve all doubts and ambiguities contained in it, if any there be, in favor of the insured or her beneficiary, and, so construed, it simply warrants that the applicant was in sound bodily health at the time she signed it. It will not do, in sound morals, for an insurance company to issue risks on the lives of married women between the ages of 18 and 45 years, without anticipating the probability of the holders of such policies obeying the divine mandate to be fruitful and multiply and replenish the earth, and a condition, either in the by-laws,

articles of association, or certificate of benefit, providing for a forfeiture in the event that the holder should become pregnant at any time would be clearly void as against the highest principles of religion, morality, and common decency. Consequently, when an application is made and approved, there is no duty on the holder of the certificate issued on such application to notify the company of any subsequently discovered evidence of pregnancy, nor would the fact, if subsequently discovered, prevent her from certifying that she was in sound bodily health, if such certificate is otherwise true. The only representation here is as to her apparent state of health, and all the evidence in the record shows that at that time she was, to all appearances, a robust and healthy woman. We are therefore impressed with the opinion that the learned trial judge erred in refusing the instruction asked by the plaintiff, as well as in giving the third paragraph of instructions above set out, for under this instruction the jury might have found the evidence insufficient to carry knowledge of pregnancy to the deceased when she made application on October 18, and still sufficient to apprise her of such fact two months later, December 17, when the certificate was issued.

We therefore recommend that the judgment of the district court be reversed and the cause be remanded for further proceedings.

AMES and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.